The next case today is United States v. Raymond Rodriguez-Rivera, appeal number 191529. Mr. Lerman, whenever you're ready. Good morning, your honors. Again, I'm Kevin Lerman on behalf of Raymond Rodriguez-Rivera. May I receive two minutes for rebuttal, please? Yes. Thank you. May it please the court. Mr. Rodriguez-Rivera's sentence suffered serious procedural error when the district court enhanced his base offense level for a previous conviction of Section 846, which punishes agreement-only conspiracy to commit a controlled substance offense. This appeal asked the court to hold that Section 846 is categorically not a controlled substance offense under the guidelines. In order to reach that holding, the court faces three questions. First, does the categorical approach apply to conspiracy offenses as listed in Application Note 1? Second, is Section 846 categorically overbroad when compared to conspiracy's generic contemporary definition? And third, is this court free to reach the issue on the merits? The answers to those questions are yes, yes, and yes. First, the categorical approach applies to Section 4B1.2 and its Application Note. The text and commentary of Section 4B1.2 support application of the categorical approach to conspiracy convictions. The plain language of Application Note 1 lists a generic offense of conspiracy. No provision in the guideline reflects any intent to create a dichotomy between state and federal convictions when they're being assessed regarding conspiracy convictions. And when the guidelines simply name a type of offense without specifically defining it, nomenclature alone does not control. This court must look to the elements of the specific offense to determine what the generic offense is and what the predicate conviction before the court is. There's a question that's puzzling me. I don't see what the categorical approach has to do with this at all. It seems we're a step before the an Application Note that defines a controlled substance offense as conspiring to commit certain other offenses. So we have an interpretation issue, just as the court did in Taylor. Here we have, in Taylor, it was what did burglary mean? Here we have to ask what does conspiring mean in that Application Note? And the categorical approach doesn't help us. That's what we use once we decide on the definition. So it would be most helpful to me to understand why you say we should read conspiring in Application Note 1 as meaning the type of conspiracy charge that requires an affirmative act as opposed to reading the type of conspiracy charge that is in 841. We advocate for reading conspiracy as an offense in the same way any offense is assessed under the categorical approach. And that is the reading that's compelled by the statutory interpretation of the Application Note. The actual language of the Application Note refers to offenses of aiding and abetting, offenses of conspiring, and offenses of attempt. This court has already applied the categorical approach to attempts in Benitez Beltran, which is referenced in our briefing. And there's every reason to apply the same analysis to another inchoate offense, which is listed side-by-side attempts. Do you understand that to apply the categorical approach, you first have to define the elements of the crime? Yes. Only then can you apply the categorical approach. And so my question is, does conspiring, is one of its elements an affirmative act or not? Because if it is, then you win. If it isn't, you lose. And there are two definitions of conspiring out there. There's the one that requires an affirmative act. There's the one that doesn't. Why should we pick the one that does? That's what would be most helpful for me to know. And that's what seems the circuits are split on. The circuit split, as I understand it, has to do with whether to apply, of assessing what the generic contemporary definition is. In this case, there's not a dispute as to whether Section 846 meets the generic definition. The generic definition is that which was applied and discussed in Garcia-Santana and adopted by the Fourth Circuit and the Tenth Circuit. The Garcia-Santana case was decided in 2014, and it noted that 36 states and 40 out of 54 total jurisdictions, along with the model penal code, and that includes the federal conspiracy definition, require an overt act. Overt act conspiracy is the generic definition. There's also not a dispute here as to whether Section 846 requires an overt act. It doesn't require one. Help me like this. Am I correct in assuming that since 846 went on the books, all or virtually all federal conspiracy for drug trafficking charges were brought under 846, not the general conspiracy statute? I don't have any statistics to cite, but I think that that's most likely the case. One of the decisions that we... So does it seem odd that the Sentencing Commission would then write an application note in the context of federal sentencing guidelines that would cover conspiracy, but exclude essentially 100 percent of the conspiracy drug offenses? It would seem odd if the application note wasn't already applying to so broad a range of statutes. Conspiring modifies not just state offenses, but federal offenses, and not just controlled substance offenses, but also crimes of violence. So in that scope, federal jurisdiction is just one of the jurisdictions of prior convictions that is encompassed. So even though the federal offense shares the same name as the generic text of the that still oddness would not demonstrate the intent to include this federal conspiracy statute. In Taylor, wasn't that the way the court went? It rejected the common law test as too narrow and too constraining that would preclude the use of too many convictions, and it therefore took the fewer element, therefore broader application prevailing state test. Here you want us to sort of flip that. You want us to take the state prevailing state test, which has more elements and therefore a narrower application than the prevailing federal statutory tests. So it seems you may have flipped Taylor on its head. Not exactly. In Taylor there was a wide range of legislative history regarding changes that had occurred in the Armed Career Criminal Act, where a definition of burglary had been removed, and that court did reject the common law definition of burglary because of the indication from the legislative history. Here we're not involving any common law definition, and there's just simply far less legislative history from which the court could infer intent. And in addition to that, the commission could have at some point, and Congress could have easily stressed or applied a definition that would have encompassed non-overdue act where you say the commission could have addressed this. When the court decision started coming out in 2016 or prior to that, do you have a time in mind? I have two main times in mind. One that's slightly beyond the scope of this case where courts questioned in the 90s whether application note one overextended the authority of the commission or was in conflict with the guideline text itself. At that time, the commission could have clarified that just as the commission lists specific references to the U.S. Code in the commentary to the guideline. I think it became clearer after DeCamp and Mathis that there were interpretation issues with the guideline, and that's why there's a constellation of cases from around 2015 to current day that are applying the categorical approach more specifically to the offenses listed in the application note. Thank you. Does the court have additional questions? Mr. Lerman, you've reserved some time, and we'll hear from Ms. McIgnatis now. Good morning. May it please the court, Julia McIgnatis for the government. The district court properly determined that unless and until this court were to revisit the decision in United States versus Piper, it could not follow the Fourth Circuit's approach in Whitley that stated an 846 conviction was not a controlled substance offense, and Mr. Rodriguez has waived any argument by not confronting the law of the circuit doctrine in his opening brief. But haven't we already ruled in Lewis that Piper did not resolve this issue? In fact, we tried to urge the parties to get off that by reading a sentence or two in Well, yes, your honor. It is the government's interpretation of Lewis that Lewis determined this issue on plain error, and on plain error the government in Lewis did not argue that Piper answered the specifical categorical mismatch that whether the generic conspiracy conviction in 846 was a categorical mismatch, and what the court said was that there was no controlling authority. Now that is correct because if we look at what the court said in 1992 in 1994, that was not how this court applied application note one to determine whether a conspiracy conviction for a controlled substance offense pursuant to the to the guidelines qualified. And what the court did in Piper, it says what we need to look is the critical determinant, echoing Fiore, is it a conspiracy to do what? So the the critical determinant is what is the substance offense, and then looking at the plain language of application note one, which this court recently held is binding precedent. If it's a conspiracy to do a controlled substance offense, then that conspiracy conviction qualifies as the controlled substance offense. And to answer your question, your honor, also the way that this court explained what on page 22 was the following. We held that a conviction for conspiracy to possess with the intent to distribute over 100 kilograms of marijuana could serve as a triggering offense for the career offender purposes so long as the crime of violence or a controlled substance offense was the object of the conspiracy. Using that same test here, we have Mr. Rivera, he pled guilty to that 841 offense is unquestionably a controlled substance offense. In Piper, there wasn't even the issue presented of how do you define conspiracy or conspiring. Correct, it was not. So why are you barking up this tree when we've tried to give you many signals that we don't consider the circuit authority to have been fully resolved on this, and we're very interested in hearing the merits? Yes, your honor, the only reason that the government is barking up this tree, and it's not doing it in attempting to be disrespectful, but because it is the government's belief that the law of the circuit doctrine here does apply. Because although Piper did not discuss whether a generic conspiracy has an extra overt act element, it was something that was discussed in Fiore. If we look at footnote four, and the court found that argument that the Rhode Island general conspiracy that it did not have an overt element to be unconvincing, and it said that that exception would swallow the rule as whole. Now, if we were to move on to the merits of the argument, when we look at what this court did do in Fiore and in Piper, and compare it to the circuit splits, it falls squarely within what the courts have held when they uphold 846 as being a controlled substance offense. They look at the plain text of the guideline to show that the sentence and commission intended for conspiracies to modify either a controlled substance offense or a crime of violence. And those courts held, just like this court did in Piper and in Fiore, that resort to the general generic definition analysis is unnecessary because there the guidelines are clear. When we look at application note one, it says a conviction for a conspiracy is a controlled substance offense itself when the object of the conspiracy is a controlled substance offense. So the plain meaning of the text and the related commentary encompass 846 as a predicate offense. Now the opposite interpretation is what observed that the commission would exclude a federal drug conspiracy but not the same substantive act. And that also meshes with what Congress was trying to do. When we look at 846 and 841, they both have the same penalties. There's no difference. So at least in Congress's mind, they should not be separate. And it's not to say that the commission, when promulgating application note one, was trying to make that difference. As this court explained in Piper, that the purpose of the application note one is to help us interpret and to clarify what and how they should be applied. Here it says conspiracies for a controlled substance offense are a controlled substance offense. It's not mandating an extra method of analysis where you have to compare to generic. And that's recently the second circuit in TAB found in favor of the government. Again, holding that the plain text of the guideline here controls and you don't need to go outside the four corners of the page. This is also consistent, albeit it's a little different, with what this court has said in McKinney when explaining whether conspiracies for a serious drug offense. It didn't require analysis to the generic, whether there was an overt act or not. So it's the government's contention that if we were to look at the circuit split, even assuming there is no law of the circuit here, our past precedent shows that we look at the four corners of the guidelines and that the guidelines provide the answer. You don't need to go outside the guidelines. But the government sincerely does believe that because Piper took Fiore's method of analysis, which rejected the need of a generic comparison, that it is closely on point and it is on all fours. And because this court in Lewis also determined, denied the request for a hearing in Bank, that using that method of analysis  questions from the court. All right, thank you. We will hear rebuttal from Mr. Lerman. Your Honor, the interpretation advanced by the government and adopted by the circuits mentioned, we respectfully contend is mistaken. In fact, to the extent reached that interpretation, the court does have to look beyond the four corners of the guideline and the application note. And as the Fourth Circuit and the Tenth Circuit have put it, those holdings to the contrary, all divine the intent of the sentencing commission without offering any evidence of that intent. To abandon the categorical approach for a single inchoate offense, but keep it for others, including in Benitez Beltran, would be illogical and would conflict with applicable precedent. As the court noted in Piper, if the predicate offenses would change based on jurisdictions, it would produce a crazy quilt of punishment results. In terms of reaching the issue, I would briefly point out that courts often decide particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions aren't binding on future cases. We would agree that the specific categorical mismatch issue was not before the court in Piper in 1994, and the court is free to decide the case on its merits. Thank you. Thank you all. Thank you. That concludes argument in this case. Attorney Lerman, and you may disconnect from the hearing at this time.